QUICK et ux. v. RUFE, Appellant.

### Division One, June 29, 1901.

1. **Limitations:** INFANT: MARRIAGE: TWENTY-FOUR-YEAR STATUTE. Disability of coverture can not be added to disability of infancy and thus prevent the running of the statute of limitations until the removal of the disability of coverture. So that, if one seized of land died in 1852, and his daughter then eight years old married when she was sixteen, the statute of limitations began to run against her at the time she reached her majority in 1862, although she was then married. And if the defendant and those under whom he claims had adverse possession from 1866, or from 1881, as the petition alleges, up to 1898 when suit was brought, her right to recover is barred by limitations, although she has been a married woman continuously from infancy to the time of bringing the suit— unless the widow's quarantine or dower rights intervened.

2. ————: WIDOW'S QUARANTINE AS BAR: DOWER. The widow's quarantine is a personal right and is inalienable. It is the right to occupy the mansion house and premises until dower is assigned. So that if she deeds her interest in the land and gives possession to the assignee, the running of the statute of limitations in favor of such assignee against the heirs of the husband is not stopped by her quarantine; and, if, after such assignment, the assignee and his grantees have had seventeen years adverse possession, the heir can not invoke a failure to assign dower in that time as a bar to the running of the statute.

Appeal from Osage Circuit Court.—*Hon. Rudolph Hirzel,* Judge.

REVERSED.

*W. S. Pope* and *Henry Marquand* for appellant.

(1) The court was wrong in finding "the plaintiffs were the owners of and tenants in common to the undivided one-tenth interest" in the land, and the finding made by the court was not sufficient to base a judgment upon. R. S. 1899, secs. 3066-7-8-9. (2) Appellant contends, even if plaintiff's cause of action was not barred, it is impossible, from the evidence in the case, to determine the interest Judy Emeline had; that the declarations of law asked by the defendant should have been given and judgment entered for him; and in any event, upon the findings, there should have been no judgment against him for costs. Gray v. Givens, 26 Mo. 291; Hauessler v. Scheittin, 9 Mo. App. 303; Orvis v. Elliott, 65 Mo. App. 96; DuPont v. McLaren, 61 Mo. 502; Smith v. Steel, 81 Mo. 455; Flannagan v. Hutchinson, 47 Mo. 237; Ross v. Ross, 81 Mo. 84; Dougherty v. Adkins, 81 Mo. 411.

*Ryors & Voshall* for respondents.

(1) Defendant can not complain because plaintiff obtained judgment for less interest than sued for. Crawford v. Arhnes, 103 Mo. 96. (2) Rights of dower and quarantine did not cease until the death of mother of plaintiff, Emeline, in June, 1897. Throckmorton v. Pence, 121 Mo. 59; Lindell R. E. Co. v. Lindell, 142 Mo. 75. (3) The deed from Sanderson to appellant, dated 1881, may possibly be an ouster, but Emeline Quick was then and is now married, and this suit was commenced in 1898. Throckmorton v. Pence, 121 Mo. 50.

MARSHALL, J.—This is an action in ejectment, begun February 23, 1898, to recover an undivided one-eighth part of the south half of the southwest quarter of the northeast quarter of section thirteen, township forty-five, range eight, in Osage county. The petition is in the usual form, and lays the ouster as of March 15, 1881. The answer admits possession and then denies generally the allegations of the petition, and pleads, affirmatively, the statute of limitations. The reply is a general denial. There was a judgment for plaintiffs for an undivided one-tenth interest, and defendant appealed.

The facts are these: Moses A. Phillips entered the land in controversy on March 8, 1836. He died in the year 1852, seized of the land, and leaving his widow and ten children. Four of the children died, two with and two without issue, and the interest of one of the four was sold in 1864 by his administrator to his mother. The deed purports to convey an undivided one-tenth interest. In January, 1860, one of the children, Judy Emeline, then sixteen years old, married Benton Quick, and this action is brought by them, to recover her share of the property. The defendant claims title in this way: On April 12, 1866, the widow and one daughter and one son, conveyed to Irvine Cox, by warranty deed, seven-tenths of the land. On May 29, 1866, the widow, as guardian of the two minor heirs,

conveyed to said Cox, two-tenths of the land. Cox mortgaged the nine-tenths interest so acquired, and the defendant acquired title thereto through the foreclosure of the mortgage by mesne conveyances, on January 20, 1881, and thereafter on December 9, 1881, he acquired a one-tenth interest from one Sanders, who had, on March 7, 1881, purchased the same from Joseph Quick, who was the only heir of Frances, a deceased child of the ancestor. In this way defendant claims to have acquired the whole interest in 1881, and to have held possession of the whole property, for over twenty-four years, continuously, notoriously, openly and adversely to the plaintiffs and the whole world.

It does not appear by what right the widow and one daughter and one son conveyed seven-tenths to Cox in 1866. Judy, the plaintiff, never conveyed her interest and never authorized it or ratified it. So that the defendant has no title to her interest unless he has acquired it by limitation. The case is here on a certificate of the judgment, and the abstract of the record, which respondent concedes is substantially correct, does not show whether the widow's dower was ever assigned her or whether she elected to take a child's share. It does show, however, that the widow died on the thirtieth of June, 1898, or about four months after this suit was begun. Mrs. Quick testified that her father died when she was only eight years old, and that she married January 11, 1860, when she was only sixteen years old, at her mother's house in Osage county, and lived in Osage county until 1865, then lived a year in Schuyler county, then a year in Jasper county, then for five years again in Schuyler county, then three years in Arkansas and then moved to Texas, where she has resided ever since, and that at the time her deposition was taken, in July, 1898, she was fifty-four years old, and her husband testified he was fifty eight years old. No instructions were asked by the plaintiff, and all those asked by the defendant were refused. The case was tried by

that court without a jury, and resulted in plaintiff's favor for possession and for one dollar damages, and the rents and profits were assessed at twenty-five cents per month.

## I.

Mrs. Quick's father died in 1852. She married in January, 1860, and was sixteen years old at that time. She resided in Osage county until 1865. At the time this suit was begun she was fifty-four years old. The defendant and those under whom he claims have been in the open, continuous, exclusive, notorious and adverse possession of the whole property, under color of title as to nine-tenths of it, since 1866, and since March, 1881, under color of title as to the whole of it. True, the defendant never acquired Mrs. Quick's interest by any conveyance from her. But he has claimed title under conveyances that purported to convey the whole title, and which, though legally insufficient to transfer Mrs. Quick's interest, are in law sufficient to constitute color of title. [Campbell v. Gas Co., 84 Mo. l. c. 377; Crispen v. Hannavan, 50 Mo. 536; St. Louis v. Gorman, 29 Mo. 593; Suddarth v. Robertson, 118 Mo. 286; Wilson v. Taylor, 119 Mo. 626.]

But under the statute of this State, color of title is not necessary to originate ownership by limitation. A claim of title with adverse possession of the requisite character for the statutory period, will carry title without any paper support thereto. [Mather v. Walsh, 107 Mo. l. c. 132.]

Mrs. Quick's right of action accrued in 1852, upon the death of her father. She was then only eight years old, and was only sixteen years old when she was married, but the disability of coverture can not be added to the disability of infancy and thus prevent the running of the statute of limitations until the removal of the disability of coverture. [Burdett v.

May, 100 Mo. l. c. 19; Campbell v. Gas Co., 84 Mo. l. c. 376; Keeton v. Keeton, 20 Mo. 530.] Her right of action having accrued while she was an infant, the statute of limitations did not begin to run until after she attained her majority in 1862.

This suit was not begun until February, 1898, or thirty-six years after the statute of limitations began to run against her, which exceeds the twenty-four-year limitation provided by section 4265, Revised Statutes 1899. The ouster is laid as of March 15, 1881, which was nearly seventeen years before this suit was begun.

Clearly, therefore, Mrs. Quick's right to recover is barred by limitation, unless the widow's dower was never assigned her and she was entitled to quarantine in the mansion house, assuming that it was the mansion house, until her dower was assigned.

The abstract of the record does not show anything as to the widow's dower, and it would be unjust to decide the case upon such an hypothesis. Moreover, the widow sold all her right, title and interest in 1866, and that ended all quarantine rights, for her grantee would not be entitled to enjoy her quarantine— that is a right personal to the widow, and is inalienable. In addition to this consideration, the petition alleges an ouster as of March 15, 1881, so that for the seventeen years preceding the institution of this suit, there could be no dower or quarantine obstacle to stop the running of the statute of limitations.

It is not clear whether this is intended to be an action by the wife, with the husband joined, or by the husband, in right of his possession by virtue of the marital relation. If it is the latter it is clearly barred as to him, if it be true, as alleged, that the ouster occurred in 1881, or if the widow's quarantine expired in 1866, when she sold the property, for in either event his right of action accrued more than ten years before this action was begun.

At the time Mrs. Quick's right of action accrued, when her

father died in 1852, and also at the time she attained her majority in 1862, there was no homestead law in Missouri, so that the property was not a homestead while her father lived, and, therefore, there could be no continued homestead right in the widow and children after his death, that could stop the running of the statute of limitations, as to either Mrs. Quick or her husband.

The only obstacle in the way of the running of the statute of limitations, therefore, that has been suggested, is that the widow's dower had never been assigned to her and therefore she was entitled to quarantine until her dower was assigned. But even this will not avail the plaintiffs, for, as pointed out, such quarantine is only a personal right of the widow to remain in the mansion house of the deceased husband until her dower was assigned her, and the widow abandoned that right in 1866, when she sold the property, and in any event she has not attempted to exercise it since 1881, when the defendant entered into the exclusive possession of the premises; and on the other hand, even if the right of quarantine was an alienable right and did not expire so long as the widow lived and dower had not been assigned to her, the plaintiff could not maintain this action, for the reason that the suit was begun on February 23, 1898, and the widow did not die until June 30, 1898. In the first contingency, pointed out, the action is barred by limitation, and in the second, the suit would be prematurely brought.

Properly considered, however, there is nothing in this record to support the contention that there were any quarantine rights complicating the case. The plaintiffs have slept upon their rights too long. The suit was not brought until forty-six years after the cause of action accrued, nor until thirty-six years after Mrs. Quick attained her majority, nor until thirty-eight years after her husband's right to possession accrued, nor until seventeen years after the date of the ouster alleged. So that

neither the disability of infancy, or of coverture, or the principle that the possession of one tenant in common is the possession of all tenants in common in the same property, until actual ouster occurs, can be invoked to save the plaintiffs' rights from the operation of the statute of limitations.

Without considering any other error assigned, it is apparent that the defendant has acquired title by limitation, and that the judgment of the circuit court is erroneous, and, hence, it follows that it must be reversed. It is so ordered. All concur.